**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1053
_____

MAYRA MARICELA REA ULLOA; J.M.P.R.,
                                                          Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A201-938-930 & A201-938-931)
Immigration Judge: Ramin Rastegar

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 6, 2025
Before:  BIBAS, FREEMAN, and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed October 8, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lead petitioner Mayra Maricela Rea Ulloa[1] petitions for review of a final order of removal. We will deny the petition.

I.

Ulloa is a citizen of Ecuador who entered the United States illegally and who concedes that she is removable for that reason. Through counsel, she applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on the ground that her former romantic partner verbally abused and threatened to kill her.

An Immigration Judge ("IJ") found Ulloa credible but denied relief. The IJ denied her applications for asylum and withholding on several grounds, including that she did not show that the government of Ecuador was "unable or unwilling to control" her former partner such that any harm he might inflict could constitute governmental persecution. Galeas Figueroa v. Att'y Gen., 998 F.3d 77, 86-88 (3d Cir. 2021); Guzman Orellana v. Att'y Gen., 956 F.3d 171, 178 (3d Cir. 2020); 8 C.F.R. § 1208.1(e). The IJ reasoned in part that, when Ulloa reported her former partner's threat to authorities, authorities immediately issued a protective order and began to prosecute him. The IJ further reasoned that, although Ulloa testified that her former partner contacted her once more in apparent violation of the protective order, she did not report that incident to authorities before leaving for the United States. For similar reasons, the IJ found that Ulloa also did not show the government acquiescence necessary to prevail on her CAT claim.

---

[1] The other petitioner is Ulloa's minor child, whose claims are derivative of hers. We thus refer herein only to Ulloa.

Ulloa appealed through counsel to the BIA, which declined to disturb the IJ's rulings and dismissed her appeal. The BIA affirmed the IJ's denial of asylum and withholding on the sole ground that Ulloa did not show that the government of Ecuador is unable or unwilling to protect her from her former partner. The BIA also deemed Ulloa's CAT claim waived on the ground that she did not meaningfully challenge the IJ's denial of that claim. Ulloa petitions for review pro se.[2]

## II.

On review, Ulloa has not challenged the BIA's ruling that she waived her CAT claim. We thus have no basis to disturb that ruling, and that ruling means that Ulloa has not exhausted her CAT claim as required by 8 U.S.C. § 1252(d)(1). See Roman Sanchez v. Att'y Gen., __ F.4th __, No. 24-2279, 2025 WL 2372028, at *2 (3d Cir. Aug. 15, 2025). We therefore do not address the claim, though we note that Ulloa's few stray references to her CAT claim in this Court do not meaningfully challenge its denial either.

That leaves Ulloa's applications for asylum and withholding of removal. The BIA affirmed their denial on the sole ground that Ulloa did not show that the government of Ecuador is unable or unwilling to protect her from her former partner. The agency's conclusion to that effect is a factual finding subject to substantial evidence review, Galeas

---

[2] We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review the IJ's and BIA's decisions together because the BIA affirmed and substantially relied on the IJ's decision. See Guzman Orellana, 956 F.3d at 177. We review factual findings for substantial evidence and may not disturb them "unless any reasonable adjudicator would be compelled to conclude to the contrary." Galeas Figueroa, 998 F.3d at 91 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal rulings de novo. See id. at 93.

Figueroa, 998 F.3d at 91, and substantial evidence supports it for the reasons that the IJ and the BIA explained.

Ulloa argues that the government of Ecuador is unable or unwilling to protect her because, despite its prompt issuance of a protective order and prosecution of her former partner, the prosecution remains ongoing years later, the government is offering her former partner a plea, past prosecutions of her former partner for incidents of domestic violence against other women failed to deter him, and he violated the protective order by contacting her. But the facts remain that the government of Ecuador promptly took and continues to take action against Ulloa's former partner in response to her report of his initial threat and that Ulloa does not claim to have reported his subsequent violation of the protective order. Thus, while we sympathize with Ulloa's plight, which unfortunately is shared by many victims of domestic abuse even in this country as the IJ observed, we cannot say that the evidence weighs so heavily in her favor as to compel the conclusion that the government of Ecuador is unable or unwilling to protect her. See, e.g., Perez v. Garland, 83 F.4th 630, 633-34 (7th Cir. 2023) (so holding with respect to similar claim); Juarez-Coronado v. Barr, 919 F.3d 1085, 1088-89 (8th Cir. 2019) (same); see also Jaco v. Garland, 24 F.4th 395, 407 (5th Cir. 2021) (holding that remand of similar claim would be futile where "the record reflects that the government was responsive to [petitioner's] fears when apprised of them").

Ulloa's remaining arguments also lack merit. She argues that certain country-conditions evidence shows that Ecuador takes inadequate measures against domestic abuse generally, but she does not acknowledge the BIA's reasons for rejecting this

4

evidence, which were sound. In any event, this evidence does not speak to the relevant question—i.e., "the government's ability and willingness to control private actors not at a general level, but rather with respect to the specific applicant seeking relief." Galeas Figueroa, 998 F.3d at 89. Ulloa also argues that the BIA failed to address certain issues, including whether the harm she fears would be on account of a protected ground, but the BIA properly explained that it was not required to address those issues because it resolved these claims on a different independently dispositive ground. See Roman Sanchez, 2025 WL 2372028, at *3 n.4.

III.

For these reasons, we will deny the petition for review. The Government's motion to dismiss the petition as untimely is denied.[3]

---

[3] The Government argues that the petition was untimely under 8 U.S.C. § 1252(b)(1) because it was due on January 9, 2025, but this Court did not receive it until the next day. There is some question whether January 9 was a "legal holiday" as defined in Fed. R. App. P. 26(a)(6)(B) because President Biden declared January 9 a National Day of Mourning for President Carter. But we need not decide that issue because the § 1252(b)(1) deadline is not jurisdictional. See Riley v. Bondi, 145 S. Ct. 2190, 2203 (2025); Inestroza-Tosta v. Att'y Gen., 105 F.4th 499, 509-12 (3d Cir. 2024), abrogated in part on other grounds by Riley, 145 S. Ct. at 2197-2201. And while the deadline might be mandatory in some sense, the Government does not argue that it prohibits other rulings in the Government's own favor and instead argues in the alternative that we should deny the petition for review on the merits. We take that approach under the circumstances presented here.